IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| KAELA VALDIVIA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 11-4092-EFM-GLR |
| ) | |
| DOBSKI & ASSOCIATES, INC., ) | |
| McDONALD'S CORPORATION, and ) | |
| RYAN B. JENNINGS. ) | |
| ) | |
| Defendants. ) | |
| ) | |

## COMPLAINT

Plaintiff Kaela Valdivia ("Valdivia" or "Plaintiff") states the following against Defendants, Dobski & Associates, Inc., McDonald's Corporation and Ryan B. Jennings ("Defendants"):

### NATURE OF THE CASE

1. This action for legal and equitable relief arises under § 706 of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, the Kansas Act Against Discrimination, K.S.A. § 44-1001, *et seq*, and other state law claims.

### PARTIES

2. Plaintiff is a female citizen of the United States, who resides in Topeka, Shawnee County, Kansas.

3. Defendant Dobski & Associates, Inc. ("Dobski") is a corporation organized and existing under the laws of the State of Kansas, and may be served with process through its registered agent, Thomas J. Dobski, at 2007 Palmer Drive, Lawrence, Kansas 66047.

4. Defendant McDonald's Corporation ("McDonald's") is a corporation organized and

1

existing under the laws of the State of Delaware, and may be served with process through its registered agent, The Prentice-Hall Corporation System, Kansas, Inc., at 200 S.W. 30th St., Topeka, KS 66611.

5.  Defendant Ryan B. Jennings ("Jennings") is an individual residing in Topeka, Kansas and may be served with process at 5201 SW 32nd St, Topeka, Kansas 66614.

## JURISDICTION AND VENUE

6.  This court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f).

7.  This court has supplemental jurisdiction over Count II and Count III of Plaintiff's Complaint pursuant to 28 U.S.C. § 1367 because all of Plaintiff's claims form part of the same case or controversy.

8.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Shawnee County, Kansas, which is in the District of Kansas.

## ADMINISTRATIVE PROCEEDINGS

9.  On or about February 12, 2010, Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC). A true and correct copy of the Charge is attached as Exhibit "A" and incorporated by reference.

10. On or about April 22, 2010, Plaintiff filed a timely Complaint with the Kansas Human Rights Commission (KHRC). A true and correct copy of the Complaint is attached as Exhibit "B" and incorporated by reference.

11. On or about June 7, 2011 Plaintiff received a Notice of Right to Sue from the EEOC.

A true and correct copy of her Notice of Right to Sue is attached as Exhibit "C" and incorporated by reference.

12. This action has been timely filed with this Court since the Plaintiff's receipt of her Notice of Right to Sue.

13. Plaintiff has exhausted her administrative remedies before the KHRC and EEOC and satisfied all conditions precedent to filing this lawsuit.

## BACKGROUND FACTS

14. Plaintiff is a female and belongs to a protected class under the Kansas Act Against Discrimination and Title VII.

15. Dobski is the franchisee and McDonald's is the franchiser of the McDonald's Restaurant at 2933 SW Wanamaker Road, Topeka, Kansas 66614 ("McDonald's Restaurant"). Dobski employs more than 15 employees. Upon information and belief, McDonald's also employs more than 15 employees.

16. Upon information and belief, McDonald's exercised significant control over its franchisee, Dobski.

17. The Dobski Crew Members Handbook ("Handbook") contains many references to the reader as an employee of McDonald's and refers to McDonald's training techniques.

18. Plaintiff was employed by Dobski and McDonald's as a crew employee at its McDonald's Restaurant beginning in or about October, 2008.

19. Upon information and belief, by virtue of McDonald's significant control, it acquiesced and or approved of Dobski's conduct towards and handling of Plaintiff's employment.

20. Beginning on or before October, 2008, and after that time, Dobski and McDonald's

3

employed Jennings as Second Assistant Manager at the McDonald's Restaurant.

21. In or about April, 2009, Jennings and Plaintiff began a romantic relationship with each other. During the course of their relationship, Plaintiff was a minor child and Jennings was an adult.

22. The Handbook in effect at that time specifically stated that "[i]t is against company policy for a manager to date a crew employee who reports to him or her directly."

23. The McDonald's Restaurant manager, Gina (last name unknown), and other assistant managers including but not necessarily limited to Paulette, Bob, and Sonya (last names unknown) knew that Jennings was in an improper relationship with Plaintiff.

24. However, no Dobski manager, employee, or owner asked either Jennings or Plaintiff to terminate the relationship.

25. During the course of Jennings and Plaintiff's relationship, Jennings treated Plaintiff differently from other similarly situated employees on account of her sex. For example, Jennings criticized Plaintiff's work performance more often than he criticized other similarly situated employees' work performance.

26. Jennings would also use a different and harsher tone of voice and even raise his voice when correcting Plaintiff's work performance to embarrass and degrade Plaintiff in front of her co-workers.

27. Jennings treated Plaintiff differently on account of her sex when he initially refused to allow her to work at the first drive-through window. Similarly situated employees with the same amount of experience were allowed to work the first drive-through window.

28. In his role as a Second Assistant Manager and while at the McDonald's Restaurant,

Jennings told Plaintiff that she "sucked at her job."

29. After their relationship ended, Jennings also repeatedly asked Plaintiff "why are you working here? You need to quit."

30. After the relationship ended and while they were at work, Jennings asked Plaintiff when they were going to have sex. Plaintiff responded that they were not going to have sex.

31. After the relationship ended, Jennings also asked Plaintiff to come over to his house. Plaintiff understood this to mean that Jennings wanted her to come over to his house to have sex with him.

32. While Jennings and Plaintiff were at work, Jennings asked Plaintiff to come over to his house on numerous occasions between August, 2009 and October, 2009.

33. As a result of Plaintiff's refusal to come over to Jennings' house, he retaliated by acting harshly to her especially if she made a mistake at work. Jennings would then focus his attention on finding things that Plaintiff was doing incorrectly at work and make negative comments about her work performance. Jennings did not treat other similarly situated employees in this manner.

34. Before their relationship ended, Jennings let Plaintiff leave work at her scheduled time. But after she ended their relationship, Jennings also expressed expectations to Plaintiff to work past the end of her shift.

35. After Plaintiff ended their relationship, Jennings repeatedly told Plaintiff that she "just needed to fucking quit," during October, 2009.

36. On or about October 24, 2009, Jennings repeatedly asked Plaintiff, via text message, to come over to his house after he got home from the bars. Plaintiff repeatedly refused.

37. The next day, on or about October 25, 2009, Plaintiff and Jennings both worked their respective shifts at the McDonald's Restaurant.

38. During their shift, Jennings pushed Plaintiff into a soda pop machine and punched her hard twice in the back. This assault was captured on the store's security video.

39. After Jennings punched her, Plaintiff remained at work and was not relieved from her shift by Jennings until one and one half hours after her scheduled shift end at 2:00 p.m.

40. After Plaintiff left work, she received a text message from Jennings stating something to the effect of "I heard today was your last day?"

41. The assault was reported to the police.

42. Jennings text messaged Plaintiff and told her to tell the police that she had exaggerated about what took place so that the police would not take him to jail and get him fired.

43. As a result of Jennings' assault, sexual harassment and degrading comments, Plaintiff felt scared and intimidated by Jennings.

44. Jennings, Plaintiff's supervisor, created an intimidating, hostile, offensive and abusive work environment, and his criminal and violent behavior, in addition to his repeated sexual harassment, resulted in her constructive discharge. She felt she had no choice but to resign.

45. Dobski and McDonald's knew or should have known about the romantic relationship between Jennings and Plaintiff, the intimidating, hostile, offensive and abusive work environment, and Jennings' sexual harassment of Plaintiff. Dobski and McDonald's failed to take appropriate action regarding the work environment and Jennings' sexual harassment and eventual constructive discharge of Plaintiff.

46. Moreover, Dobski and McDonald's failed to sufficiently train their employees on

preventing or appropriately addressing sexual harassment and inappropriate relationships between management and crew members. Moreover, Dobski and McDonald's encouraged and condoned an environment of sexual harassment or discrimination because of their inaction.

47. As a result of Dobski and McDonalds' failure to address Jennings' inappropriate behavior and failure to properly train their employees, Plaintiff was sexually harassed, forced to endure a hostile and abusive work environment, and wrongfully and constructively discharged on account of her sex.

### COUNT I- Title VII Sex Discrimination
### (Against Defendants Dobski and McDonald's)

48. Plaintiff incorporates by reference paragraphs 1 through 47 of her Complaint.

49. During the unlawful employment practices giving rise to this action, Dobski and McDonald's were "employers," as defined by 42 U.S.C. § 2000e(b), and McDonald's was a joint employer.

50. During the unlawful employment practices giving rise to this action, Plaintiff was an "employee" of Dobski and McDonald's, as defined by 42 U.S.C. § 2000e(f).

51. But for Plaintiff's sex, female, she would not have been subjected to this unlawful harassment, assault and constructive discharge.

52. The conduct described above would have been considered intimidating, hostile, offensive and abusive to a reasonable person of the same sex in Plaintiff's position and was considered intimidating, hostile, offensive and abusive by Plaintiff.

53. Management level employees of Dobski and McDonald's knew, or should have known, of the sexual harassment and sexual discrimination described above, but negligently failed

to take appropriate remedial action.

54. Dobski's and McDonald's actions and/or inaction, had the purpose and effect of unreasonably interfering with Plaintiff's work performance, and creating an intimidating, hostile, abusive and offensive working environment.

55. Dobski's and McDonald's actions and/or inaction had the purpose and effect of unreasonably interfering with Plaintiff's work performance, leading to Plaintiff's constructive discharge.

56. During the course of Plaintiff's employment, Dobski and McDonald's representatives and/or agents, acting within the scope and course of employment, engaged in a pattern and practice of intentional discrimination and sexual harassment against Plaintiff, based on her sex, in violation of § 703(a) of Title VII, 42 U.S.C. § 2000e-2(a).

57. Dobski and McDonald's engaged in these discriminatory practices with malice or reckless indifference to Plaintiff's federally protected rights.

58. As a direct and proximate result of the unlawful employment practices of Dobski and McDonald's, Plaintiff has sustained substantial damages which exceed $75,000.00, including, but not limited to, loss of employment, lost wages, mental anguish, inconvenience, emotional suffering, and humiliation.

WHEREFORE, Plaintiff Kaela Valdivia prays the Court enter judgment in her favor and against Defendants, Dobski and McDonald's, on Count I of her Complaint, for a finding that she has been subjected to unlawful sexual harassment and discrimination in violation of 42 U.S.C. § 2000e, *et seq.*; for an award of back pay, including but not limited to, lost fringe benefits, bonuses, cost of living increases and other benefits, including interest; for an award of front pay in a reasonable

z
w

amount; for an award of compensatory and punitive damages; for her reasonable attorneys' and expert fees provided by 42 U.S.C. § 2000e-5(k); and for such other and further relief the Court deems just and proper.

### COUNT II- KAAD Sex Discrimination
### (Against Defendants Dobski and McDonald's)

59. Plaintiff incorporates by reference paragraphs 1 through 58 of her Complaint.

60. During the unlawful employment practices giving rise to this action, Dobski and McDonald's were Plaintiff's "employers," as defined by K.S.A. 44-1002(b) and McDonald's was a joint employer.

61. During the unlawful employment practices giving rise to this action, Plaintiff was an "employee" of Dobski and McDonald's, as defined by K.S.A. 44-1002(c).

62. Dobski's and McDonald's actions and/or inaction constituted unlawful employment practices in violation of the Kansas Act Against Discrimination, K.S.A. § 44-1001, *et seq.*

WHEREFORE, Plaintiff Kaela Valdivia prays the Court enter judgment in her favor and against Defendants, Dobski and McDonald's, on Count II of her Complaint, for a finding that she has been subjected to unlawful sexual harassment and discrimination in violation of K.S.A. 44-1001, *et seq.*; for an award of back pay, including but not limited to, lost fringe benefits, bonuses, cost of living increases and other benefits including interest; for an award of front pay in a reasonable amount; for an award of $2,000.00 for pain, suffering and humiliation; and for such other and further relief the Court deems just and proper.

### COUNT III- Battery
### (Against all Defendants)

63. Plaintiff incorporates by reference paragraphs 1 through 62 of her Complaint.

amount; for an award of compensatory and punitive damages; for her reasonable attorneys' and expert fees provided by 42 U.S.C. § 2000e-5(k); and for such other and further relief the Court deems just and proper.

### COUNT II- KAAD Sex Discrimination
### (Against Defendants Dobski and McDonald's)

59. Plaintiff incorporates by reference paragraphs 1 through 58 of her Complaint.

60. During the unlawful employment practices giving rise to this action, Dobski and McDonald's were Plaintiff's "employers," as defined by K.S.A. 44-1002(b) and McDonald's was a joint employer.

61. During the unlawful employment practices giving rise to this action, Plaintiff was an "employee" of Dobski and McDonald's, as defined by K.S.A. 44-1002(c).

62. Dobski's and McDonald's actions and/or inaction constituted unlawful employment practices in violation of the Kansas Act Against Discrimination, K.S.A. § 44-1001, *et seq.*

WHEREFORE, Plaintiff Kaela Valdivia prays the Court enter judgment in her favor and against Defendants, Dobski and McDonald's, on Count II of her Complaint, for a finding that she has been subjected to unlawful sexual harassment and discrimination in violation of K.S.A. 44-1001, *et seq.*; for an award of back pay, including but not limited to, lost fringe benefits, bonuses, cost of living increases and other benefits including interest; for an award of front pay in a reasonable amount; for an award of $2,000.00 for pain, suffering and humiliation; and for such other and further relief the Court deems just and proper.

### COUNT III- Battery
### (Against all Defendants)

63. Plaintiff incorporates by reference paragraphs 1 through 62 of her Complaint.

64. On or about October 25, 2009, during Plaintiff's employment and while she was performing responsibilities associated with her employment, Jennings intentionally touched Plaintiff.

65. Jennings' contact with Plaintiff was harmful and offensive.

66. As a direct and proximate cause of Jennings' harmful and offensive contact, Plaintiff sustained bodily injuries, physical pain, and mental suffering, including humiliation and indignity.

67. Jennings conduct showed a complete indifference to, and a conscious disregard for the health and safety of Plaintiff, justifying an award of punitive damages in this matter.

68. On or about October 25, 2009, and at the time of Jennings' harmful and offensive contact with Plaintiff, Jennings was acting within the scope and course of his employment as Second Assistant Manager of the McDonald's Restaurant and in furtherance of Dobski's and McDonald's business interests. Dobski and McDonald's are liable for Jennings' actions.

WHEREFORE, Plaintiff Kaela Valdivia prays the Court enter judgment in her favor and against Defendants, Dobski, McDonald's and Jennings, on Count III of her Complaint, for an award of compensatory and punitive damages in excess of $75,000.00; for the cost of this action; and for such other and further relief the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a trial by jury on all counts and allegations of wrongful conduct alleged in this Complaint.

## DESIGNATION OF PLACE OF TRIAL

Pursuant to D. Kan. Rule 40.2, Plaintiff designates Topeka, Kansas as the place of trial.

Respectfully submitted,

s/ J. Phillip Gragson
J. Phillip Gragson, # 16103
Amanda S. Vogelsberg, # 23360
Jonathan M. Snyder, # 24931
Henson, Hutton,
 Mudrick & Gragson, LLP
100 SE 9th St., 2nd Floor
PO Box 3555
Topeka, KS 66601-3555
(785) 232-2200
Telefax: (785) 232-3344
jpgragson@hensonlawoffice.com
avogelsberg@hensonlawoffice.com
jsnyder@hensonlawoffice.com
*Attorneys for Plaintiff*